TOWN OF ROYALTON vs. JACOB FOX & al.

It is discretionary with the Court whether they will issue a writ of *certiorari*.

Before issuing the writ they will examine the record, and if they discover that it would be an injury to the public to have the proceedings quashed they will refuse to issue the writ.

On an appeal from the decision of the Board of Road Commissioners, under the act of 1830, it was the duty of the committee, to affirm or reverse the order of the commissioners, and unless they were all agreed to reverse it was their duty to affirm. Therefore,

Where they only affirmed an order of the Commissioners, with respect to the erecting and building a bridge, but recommended to build it of a different plan or description than the one ordered by the Commisioners, their proceedings were irregular and were quashed on *certiorari*.

When by the repeal of a law, an inferior tribunal cannot carry their proceedings into full effect, and no mode is prescribed in the repealing statute for that purpose, the proceedings of the inferior tribunal if not completed, will be wholly set aside.

This was an application to this Court for a *certiorari* made by the town of Royalton, to be directed to the Clerk of the late Board of Road Commissioners in the County, requiring him to certify the doings of said Board in the case therein stated. The whole proceeding, and the facts upon which the application is founded are fully set forth in the opinion of the Court.

*Collamer, for Royalton,* contended, I. The committee on the appeal were authorized only to affirm or reverse the order of the commissioners in whole as made. This they did not do, and therefore wrong.

1st. The commissioners were bound when they ordered a bridge, to prescribe its model, and as much bound to the last as first. This, if unreversed, became the measure of duty to the ⸠ town; and if impracticable of execution, their only redress was appeal. This point should have been passed upon and been decisive before the committee, but in this case has been evaded.

2d. The town found the model impracticable; and if this were so shown, they had the right to have it reversed on appeal. Can this be evaded in this case, and the town left without any measure of duty, and subjected to additional cost in asserting their rights, and left liable to prosecution, whatever model of bridge they erect?

3d. Every order in judgement is vacated by appeal;

WINDSOR,
February,
1833.

Town of
Royalton
vs.
Fox & al.

and therefore the said orders of the commissioners with all their incidents are vacated. Now the committee only affirm the first; and the order is imperfect and wrong.

II. The law creating the board of road commissioners was repealed before this business was perfected or could be; nor was the reservation of power therein sufficient to perfect it; therefore irregular.

Though the saving clause professed to reserve some power, it was inoperative, as the men went out of office the first day of December 1831, and the board ceased. No board existed to issue orders to perfect their doing, enforce their orders; issue process or receive and record the report of the committee on appeal. 3 Burr. 1456, 3 Cra. 281; 6 Pick. 501.

*Marsh*, contra.

The opinion of the Court was pronounced by

WILLIAMS, J.—This is an application by the town of Royalton, for a *certiorari* to be directed to the clerk of the late board of road commissioners in the County of Windsor to certify their doings in laying out a certain road and ordering the building of a bridge thereon, on the petition of Jacob Fox et al. Notice that such an application would be made has been given to Mr. Fox. As the Court always exercises a discretionary power in issuing this writ the party applying must set forth by affidavit such facts as shew that it is proper and expedient that the writ should issue. It is said in England, that the writ is issued as a matter of course on the application of the Crown, but otherwise on the application of the defendant. 2 Term Rep. 89.

In the case of *Lees* vs. *Childs*, 17 Mass. 351, the Court refused to grant the writ, because the applicants had failed to show that injustice had been done by the proceedings in the inferior tribunal; and in the case of *ex parte Weston & al.* 11 Mass. 417, it was remarked by the Court that before granting a *certiorari* they will always look into the record and even into the circumstances attending the process, because when the record is actually returned in obedience to the writ of *certiorari* they are bound to quash the whole proceeding if error should appear. When the error or ir-

regularity complained of is merely in the forms of proceeding and no injustice has been done, or when from any other cause it would be a greater injury to quash the proceedings of the inferior tribunals than to have them remain, the Court in the exercise of their sound discretion will refuse the writ. *The King* vs. *Bass*, 5 Term 251 ; *Ex parte Jed. Miller*, 4 Mass. 565.

This application is founded on the affidavit of Mr. Collamer, who states, the proceedings both of the road commissioners and of the committee appointed by the County Court on appeal from the decision of the commissioners. By this affidavit it appears that the board of commissioners on the 18th day of November 1831, made an order on the town of Royalton, to build a bridge in a place directed in the order of a certain description and plan described the order, with a double trussell in the river. An appeal was taken from the decision of the road commissioners and a committee appointed, who on the 7th of August met to attend to the business of their appointment. The town of Royalton were heard before the committee, introduced evidence tending to shew the impracticability of sustaining a permanent bridge of the plan and description ordered, insisted that the committee must affirm or reverse the whole order, and requested that they would state their decision and the grounds of it, in writing. The committee made an order and adjudication in the following words. " That the said decision of the said road commissioners be affirmed with respect to the erecting and building a good and permanent bridge across said White River, in the place where the last bridge stood, near Jacob Fox's tavern house."— They then proceeded to recommend to the town to build the bridge of another form than the one ordered by the commissioners, and without any trussel, in the river. It will be noticed here that they neither affirm or reverse the decision of the commissioners. By the Statute in relation to roads and bridges passed in 1830 (sec. 30) it was made the duty of the road commissioners when they ordered a bridge to be built, to determine not only as to the time when the bridge was to be built, but also, the kind of bridge to be built, and it appears that this was done by the commissioners. On an appeal a committee were to

Windsor,
February,
1833.

Town of
Royalton
vs.
Fox & al.

be appointed by the County Court, who were to give no-tice to the parties to visit the petitioners and the town, make personal inspection of the premises, and reverse or affirm the order of the commissioners. This committee were not authorised to lay out a new road or direct the building of a bridge at a different place at a different time or of a different form or kind from the one laid out or ordered by the commissioners. Their power and their only power was to reverse or affirm the decision of the commissioners, and they could not reverse it unless all three of the committee were agreed therein. It was evidently therefore, the duty of the committee, if they were not agreed in reversing the order of the commissioners to affirm the same; and if they were unanimous in believing that the order of the commissioners was erroneous, and that it was impracticable or inexpedient for the town to build or maintain a bridge of the form or kind ordered by the commissioners, to reverse their decision, leaving the petitioners to take such further steps as should be thought best. The position that was taken by the town of Royalton in the hearing before the committee, was undoubtedly correct, to wit, that it was the duty of the committee to affirm or reverse the whole order of the commissioners, and that if the committee were convinced of the impracticability of sustaining there a bridge of the description ordered they should reverse the said order. If the committee had affirmed the order of the commissioners, and then added the recommendation to build the bridge of another form and without trussels, there might have been some foundation for the argument which has been urged, that this recommendation should be treated as mere surplusage. Though it would have appeared somewhat singular if the committee had affirmed an order, a compliance with which if it could have been enforced at all by the provisions of any existing law, must have been by indictment against the town for not performing the order, and yet recommend to the town not to perform the order, or in other words not to build the bridge of the kind ordered, but of a different kind. In this case the committee have not affirmed the decision of the commissioners. They coincide with the commissioners in opinion that it was proper and necessa-

WINDSOR,
February,
1833.

Town of
Royalton
vs.
Fox & al.

ry to erect a permanent bridge at the place described, but disagree with them as to the kind of bridge to be built, and neither affirm or reverse the decision of the commissioners. For the reason above, the whole proceedings should be set aside. It is not necessary for us to say what would have been the situation of the proceedings of the commissioners after an appeal, if the committee had not been called out, whether the proceedings of the commissioners would not be considered as established unless the party appealing call out the committee, inasmuch as we are of opinion that when the committee are called out and do make inspection, they must make a decision in the premises or the whole proceedings should be set aside.— A town appealing is entitled to a decision from the committee affirming the order of the commissioners before they are subject to any expense about making a road or building a bridge.

There is also another ground on which the Court would have granted this *certiorari*. The law under which these proceedings were had was repealed at the session of the Legislature in 1831, and the board of commissioners as such ceased to exist. I can see no way in which the order of the board of commissioners for building or erecting a bridge, where there was none before could be enforced, except by the commissioners themselves issuing an extent against the town to collect such sum as they order for that purpose, and by expending the same in making a bridge under the superintendance of a committee appointed for that purpose.

At the time the committee were called out there was no board of commissioners in existence to issue such extent, and of course they could not complete their proceedings. The Statute of 1806, which was the only statute in existence relating to building bridges, authorises the County Court on petition to appoint a committee and on their report to make order for the building a bridge if they think proper. This statute gives to such committee the power of determining on the expediency of erecting such bridge, and is wholly an original proceeding. Such a committee may still be asked for, and appointed, and the establishment of this bridge by the road commissioners

would have no effect upon their proceedings and would be wholly inoperative, as the road commissioners could not complete their proceedings and no tribunal has been erected to carry them into effect.

This would of itself be a sufficient reason for issuing a *certiorari* and quashing proceedings which cannot be completed. The Court think this a proper case for them in the exercise of their discretionary power to award that a writ of *certiorari* issue, and it is accordingly ordered that such writ issue. The writ was issued, the parties consented to a return instanter, and thereupon the proceedings of the road commissioners and the committee were set aside.

[The Legislature have since, by an act passed November 8th, 1832, made provision that the clerks of the County Court may issue extents and grant executions in the same manner that the clerk of the commissioners could have done if they had been continued in office.]